NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                    :
JASMINE RODRIGUEZ, et al.,          :
                                    :   Civil Action No. 14-3729 (RMB)
            Plaintiffs,             :
                                    :
       v.                           :          **OPINION**
                                    :
STATE OF NEW JERSEY, et al.,        :
                                    :
            Defendants.             :
_____:

**BUMB, District Judge:**

　　This matter comes before the Court upon Plaintiffs' filing of a civil complaint ("Complaint") and prepayment of the filing fee. <u>See</u> Docket Entries Nos. 1, 3 and 4.[1]  For the reasons detailed below, this matter will be reserved for Plaintiffs' challenges deriving from the alleged medical care transactions, while the claims deriving from an unrelated arrest transaction will be severed into a new matter.  Plaintiffs' medical care challenges will be dismissed, and this action will be terminated with leave to amend.  Upon payment of the filing fee in their new matter, Plaintiffs will be allowed to show cause as to why their state law based arrest claims should not be dismissed for lack of jurisdiction.  Plaintiffs will be directed to establish standing to sue in both matters.  Defendants will be directed to enter

_____

　　[1]  Upon the Clerk's quality control message that the Complaint improperly included a minor's name, Plaintiffs filed two amended pleadings substantively identical to the Complaint.

appearances in both matters without filing responsive pleadings at this juncture.

**I.   BACKGROUND**

After Jerome Iozzia ("Iozzia") passed away in confinement, Jasmine Rodriguez ("Rodriguez") commenced this represented matter by asserting that Iozzia was her "fiancée" and the father of her son, N.I.  She also alleged that she was the administratrix of Iozzia's estate.[2]  Docket Entry No. 1, at 4. The estate, however, is not named as Plaintiff.  Rather, the Complaint names, as Plaintiffs, the deceased, N.I. and Rodriguez, in her individual capacity and as the administratrix.  See id. at 3.

The Complaint alleges that

[on]n . . . November 13, 2013, the . . . Police
Department were [sic] called to the residence of . . .
Iozzia and . . . Rodriguez regarding a domestic issue .
. . . [Executing the arrest], the . . . Police
Department overzealously pursued . . . Iozzia and
aggressively tackled [him] to the ground[,] and
proceeded to spray, at an excessive clip, pepper spray
[as] to force . . . Iozzia to become immobile. [After
the Police Department's] excessive use of pepper spray,
Iozzia suffered heart palpitations, chest pain and
shortness of breath.  During his [arrest by] the . . .
Police Department, he was unnecessarily sprayed with
"OC" spray and had an adverse reaction to the same,
requiring transportation to [a hospital] for chest
pain, shortness of breath and heart palpitation.[3]

---

[2]  A copy of Iozzia's death certificate attached to the
Complaint indicated that he passed away on February 25, 2014, at
the age of fifty.  See Docket Entry No. 1-4, at 10.

[3]  While in the hospital, Iozzia "experienced an episode of
bradycardia . . . .  [Thus, prior to being released to the Jail,]
Iozzia . . . underwent [a] pacemaker implantation on November 18,

Id. at 9.  The remainder of the Complaint contains a lengthy
narrative reflecting on Iozzia's conditions of confinement after
his release to the Jail.  The narrative is laden with conclusory
statements and quotations from newspaper headlines.  See id. at
10-18 (quoting a newspaper headline, "His life could have been
saved," and opining that "[n]o other prisoners should suffer or
die at the hands of correctional officers or medical staff that
do not live up to their job responsibilities or job duties").
Substantively, the narrative can be reduced to ten allegations:
(a) upon Iozzia's release to Jail, Jail personnel were informed
that Iozzia was prescribed a heart medication and recommended his
"return to the pacemaker clinic in three months," i.e., around
February 19, 2014, for a check of his pacemaker; (b) although
Iozzia requested such follow-up appointment, he did not have it
by the time he died on February 25, 2014;[4] (c) on February 21,
2014, i.e., four days prior to his death, he had a tooth removed
by an unidentified dentist who extracted the tooth "without [a]
prophylactic antibiotic coverage" or follow-up antibiotic
treatment; (d) two days after that dental procedure, i.e., on

---

2013."  Docket Entry No. 1, at 9-10; see also Gallardo v. United
States, 2014 U.S. App. LEXIS 9206, at *13 (10th Cir. May 19,
2014) ("bradycardia [is] low heart rate").

   [4]  Plaintiffs opine that lack of the appointment indicated
that the Jail acted "negligent[ly], grossly negligent[ly],
reckless[ly] and/or willfully ignored" the recommendation, and
such actions amounted to "a gross departure from the standard of
care."  Docket Entry No. 1, at 11.

February 23, 2014, Iozzia developed a fever and requested fever medication, as well as the heart medication prescribed when his pacemaker was implanted;[5] (e) the next day, on February 24, 2014, he "experienced shortness of breath and some 'fluttering' of his heart[,] and was transported to the medical wing of the Jail [in a] wheelchair [in which] he was kept [seated] for several hours" until (f) Iozzia's EKG was taken and "showed some abnormalities," prompting the medical personnel "to have [the EKG] interpreted"; (g) during the rest of February 24, 2014, Iozzia's "condition appeared to be unchanged," and he was placed in a cell in the medical wing; (h) the next morning, on February 25, 2014, while brushing his teeth in the cell, he collapsed on the floor; (i) the water he left running flooded the floor, so the nurse who found him "was unable to [administer an] AED shock"; therefore, (j) Iozza was taken to a hospital "with resuscitation [efforts] in progress."  Id. at 10-13.  "[H]e was pronounced dead shortly after his arrival to the hospital."  Docket Entry No. 1, at 14.  His death certificate "lists pneumonia, empyema and sepsis [rather than his heart condition, heart failure or other heart-related problem] as the cause of death."  Id.; see also  Docket

_____

[5]  Iozzia's February 23, 2014, request unambiguously stated that he did not request the prescribed heart medication until February 23, 2014.  See Docket Entry No. 1, at 12.

Entry No. 1-4, at 10.[6]  On the basis of these facts, Plaintiffs seek $25 million in compensatory and punitive damages.  See Docket Entry No. 3, at 1.

They name twenty-two persons and entities as Defendants: (1) the State of New Jersey ("State"); (2) the New Jersey Department of Corrections ("DOC"); (3) Correction Officer Leonard Curtis ("Curtis"); (4) the Warden of Burlington County Jail ("Warden"); (5) Burlington County Jail ("Jail"); (6) Burlington County ("County"); (7) CFG Health System ("CFG"); (8) Corizon Health, Inc. ("Corizon"); (9) nurse Regina Evans ("Evans"); (10) Pemberton Township Police Department ("Police Department"); (11) Pemberton Township ("Township I");[7] (12) Township of Mount Holly ("Township II");[8] (13-17) John and Jane Does ("Does") 1 to 5; and (18-22) ABC Corporations ("ABCs") 1 to 5.

## II. DISCUSSION

Since Plaintiffs' allegations raise challenges on behalf of Iozzia, an inmate, and seek damages from government entities and officials, Sections 1915A and 1997e of Title 28 of the United

---

[6]  For reasons not entirely clear to this Court, Plaintiffs maintain that Iozzia "die[d] of cardiac arrest," see Docket Entry No. 1-1, at 4, even though they: (a) attached Iozzia's death certificate which states that the cause of his death was unrelated to his heart condition; and (b) admitted the same in the Complaint.  See Docket Entry No. 1, at 14.

[7]  Township I appears to be the locale of Iozzia's arrest.

[8]  Township II appears to be the locale of the Jail.

States Code obligate this Court to screen the Complaint for sua sponte dismissal.[9]  Moreover, this "Court has a continuing obligation to sua sponte raise the issue of subject matter jurisdiction." Bracken v. Matgouranis, 296 F.3d 160, 162 (3d Cir. 2002); see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982) ("A federal court [should] raise lack of subject-matter jurisdiction on its own", including that of Plaintiffs' standing to sue).[10]

---

[9]
    The court shall review . . . as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
    (1)  is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
    (2)  seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(a) and (b).

    The court shall on its own motion . . . dismiss any action brought with respect to prison conditions under . . . 42 U.S.C. 1983, or any other Federal law, by a prisoner confined in any jail . . . if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

42 U.S.C. § 1997e(c).

    [10] "[S]tanding can be colorably characterized as an issue of subject matter jurisdiction," Hill v. Vanderbilt Capital Advisors, LLC, 702 F.3d 1220, 1222 (10th Cir. 2012), and the burden to establish jurisdiction falls on Plaintiffs.  See

6

This Court is also obligated to establish that Plaintiffs' challenges are procedurally proper.  <u>See</u> Fed. R. Civ. P. 18(a), 20(a)(2).  Here, the Complaint is procedurally, jurisdictionally and substantively deficient.

### 1. <u>Procedural Deficiencies</u>

Rule 20 of the Federal Rules of Civil Procedure limits the joinder of defendants, and Rule 18 limits the joinder of claims. <u>See</u> Fed. R. Civ. P. 18(a), 20(a)(2).  Rule 20 provides that "[p]ersons . . . may be joined in one action as defendants if . . . any right to relief is asserted against them . . . aris[es] out of the same transaction . . . or series of [interrelated] transactions."  Fed. R. Civ. P. 20(a)(2)(A) and (B).[11]

---

<u>Kokkonen v. Guardian Life Ins.</u>, 511 U.S. 375, 377 (1994).

[11]  Rule 18 (a) provides that "[a plaintiff] may join . . . as many claims as it has against an opposing party."  Fed. R. Civ. P. 18(a).  Wright & Miller's treatise on federal civil procedure explains that, where multiple defendants are named, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18 . . . . Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction.

Charles Allen Wright, et al., 7 <u>Federal Practice & Procedure Civil</u> § 1655 (3d ed. 1997 & 2010).

This rule applies to all legal actions, including those
brought by inmates, even if they are proceeding pro se.

> [M]ultiple claims against a single party are fine, but
> Claim A against Defendant 1 should not be joined with
> unrelated Claim B against Defendant 2.  Unrelated
> claims against different defendants belong in different
> suits, not only to prevent the sort of morass that [a
> multi]-claim, [multi]-defendant suit produce[s] but
> also to ensure that prisoners pay the required filing
> fees . . . .  A buckshot complaint that would be
> rejected if filed by a free person - say, a suit
> complaining that A defrauded the plaintiff, B defamed
> him, C punched him, D failed to pay a debt, and E
> infringed his copyright, all in different transactions
> - should be rejected if filed by a prisoner.

George v. Smith, 507 F. 3d 605, 607 (7th Cir. 2007).  Here, the
alleged facts depict two wholly unrelated transactions.  One is
Iozzia's November 13, 2013, arrest that, allegedly, involved the
officers' use of pepper spray in order to subdue him and prevent
his flight.  The other is a series of medical care occurrences or
lack of medical care at the Jail from February 21, 2014, to
February 25, 2014.  The arresting officers at the scene on
November 13, 2013, played no part in Iozzia's medical care, and
the Jail's medical personnel played no part in these officers'
use of pepper spray.  Since the Complaint raises claims deriving
from unrelated transactions and, as detailed infra, names no
Defendant amenable to suit and personally involved in both, this
Court will reserve the instant matter for the medical challenges
and sever the claim relating to the November 13, 2013, arrest

8

into a separate action.[12]  This Court will address only the
medical care challenges here.

    **2.**   **Standing to Pursue Federal Medical Care Challenges**

     Since, as alleged, neither Rodriguez nor N.I. had any
personal involvement in Iozzia's medical care at the Jail and no
interactions with Defendants on their own, they suffered no
constitutional violation.  They, thus, lack standing for the
purposes of the jurisdiction-generating constitutional claims.
The sole entity entitled to pursue Iozzia's constitutional claims
is Iozzia's estate, which is not named as Plaintiff.  Therefore,
this Court will direct the Clerk to add the estate as a Plaintiff
in this matter.[13]  Moreover, because nothing in Plaintiffs' 124-
page-long submission establishes there was an order issued by the
Burlington County Surrogate's Court appointing Rodriguez as the
administratrix prior to filing of the Complaint and, hence,

---

   [12]  In the event Plaintiffs elect to prosecute their new
matter, they will be obligated to pay the filing fee.  Also,
because their legal theories relating to the arrest, _i.e._,
"assault and battery" and "negligent entrustment/breach of
fiduciary duty/vicarious liability" are state claims not moored,
transactionally, to any jurisdiction-generating federal arrest
claim, they will be directed to show cause as to why their state
law claims should not be dismissed for lack of jurisdiction
without prejudice to litigating them in a state forum.  See
United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).

   [13]  Rodriguez, if appointed the estate's administratrix, may
prosecute constitutional claims but cannot qualify as Plaintiff.

enabling her to litigate on behalf of the estate, this Court will direct Rodriguez to produce such order.

**3.  <u>Inappropriately Named Defendants</u>**

As noted <u>supra</u>, Plaintiffs name twenty-two Defendants: the State, DOC, County, Police Department, Township I, Township II, Warden, Jail, CFG, Corizon, Curtis, Evans, Does 1-5 and ABCs 1-5.

However, the Eleventh Amendment protects the State from § 1983 suit in federal court regardless of the kind of relief sought.  See <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984).  Moreover, arms of the State, the DOC, the Police Department and the Jail, are not  "persons" amenable to suit for damages under § 1983.  See <u>Will v. Mich. Dept. of State Police</u>, 491 U.S. 58, 71 (1989); <u>Grabow v. Southern State Corr.</u>, 726 F. Supp. 537, 538-39 (D.N.J. 1989); <u>see also</u> <u>Vance v. Cty of Santa Clara</u>, 928 F. Supp. 993, 995 (N.D. Cal. 1996); <u>Mayes v. Elrod</u>, 470 F. Supp. 1188, 1192 (N.D. Ill. 1979).  Thus, all claims against the State and its arms are barred.  See <u>McCauley v. Univ. of V.I.</u>, 618 F.3d 232, 241 (3d Cir. 2010); <u>MCI Telecom. Corp. v. Bell Atl. of Pa.</u>, 271 F.3d 491, 503 (3d Cir. 2001).[14]

Claims against the County, both Townships, CFG, Corizon and Warden are subject to dismissal as based solely on the theory of

---

[14]  The same applies to the Warden, Curtis and Evans in the event they are sued in their official capacities, as agents of the State.  See <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985).

10

respondeat superior.  See Ashcroft v. Iqbal, 556 U.S. 662, 676–77
(2009) (supervising entities, be they governmental, juridical or
natural, "may not be held liable for unconstitutional conduct of
their subordinates under a theory of respondeat superior," which
means that a plaintiff must allege facts showing each entity's
personal involvement in the alleged wrong); see also Colburn v.
Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991) (same).
Here, the Complaint, while lengthy, is void of any facts
personally implicating the respondeat superior Defendants.  Thus,
all constitutional claims against them will be dismissed.  See
Solan v. Ranck, 326 F. App'x 97, 100-01 (3d Cir. 2009), cert.
denied, 558 U.S. 884 (2009) (quoting Rode v. Dellarciprete, 845
F.2d 1195, 1207 (3d Cir. 1988), and citing Evancho v. Fisher, 423
F.3d 347, 353 (3d Cir. 2005)).  Claims against Curtis and Does 1-
5, in their individual capacities (and claims against ABCs 1-5),
are subject to dismissal for failure to assert facts implicating
them in the alleged events.[15]  That leaves this Court solely with
the estate's due process claim against Evans.

---

[15]    The Complaint makes no factual assertions of any kind
as to Curtis, Does 1-5 and ABCs 1-5.  See generally, Docket
Entries Nos. 1 and 1-1.  Moreover, Township I, i.e., the locale
of Iozzia's arrest, could not have had any relation to Iozzia's
medical care at the Jail located in Township II.  Hence, Township
I was improperly named as Defendant for two reasons: (a) under
the invalid respondeat superior theory raised in connection with
the arrest transaction; and (b) irrelevance of the arrest to
Iozzia's medical care at the Jail located in Township II.

4.    <u>**Failure to State a Federal Denial of Medical Care Claim**</u>

The medical care claim, raised under Plaintiffs' "violation of § 1983" theory, is deficient as pled. All relevant allegations under that theory are limited to *two sentences*: (a) "[D]efendants denied [Iozzia] adequate medical care"; and (b) "[D]efendants subjected [Iozzia] to cruel and unusual punishment in the form of inadequate medical care."[16]

---

[16]    Short of these two sentences, the entire "violation of § 1983" claim is dedicated to an unrelated issue of Rodriguez's alleged past/speculative future emotional injuries.  It reads:

> As a direct and proximate result of the conduct described herein above, [Rodriguez] has suffered physical injury; severe emotional distress; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform tasks, anxiety; depression; humiliation; pain of mind and body; embarrassment; is and has been unable to live a normal life; is and has been unable to engage in normal development and activities; suffers from self-destructive behavior patters and will continue to so in the future; will in the future be caused to endure severe pain in mind and body; was prevented and will in the future be prevented from engaging in her normal daily activities, because of [Iozzia's] untimely death. [Rodriguez's] self-esteem and ability to trust others has been substantially impaired, making it more difficult for her to obtain future help and treatment from other mental health professionals and health care professionals in general and have incurred and will continue to incur medical, hospital and psychiatric expenses in amounts yet to be determined.  The actions of Defendants as alleged herein shattered the natural human trust inherent in [Rodriguez's] relationship with . . . other persons, thereby causing and contributing to psychological injuries to [Rodriguez] necessitating the need for past, present and future psychological care and treatment, resulting in loss of earnings and loss of future earning capacity, all contributing to

12

Affording the represented Complaint at bar the lenience afforded only to pro se pleadings, see Erickson v. Pardus, 551 U.S. 89 (2007), this Court construes these two sentences as alleging a due process denial of medical care claim.[17]  Since "the Due Process rights of a pre-trial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner," Reynolds v. Wagner, 128 F.3d 166, 173 (3d Cir. 1997) (citation omitted); see also Bell, 441 U.S. at 544; City of Revere v. Massachusetts, 463 U.S. 239, 244 (1983), the Eighth Amendment sets forth the floor for due process claims.

---

> her damages and dollar sum subject to proof at the time
> of trial.  As described above, [D]efendants abused
> their authority granted upon them when [D]efendants
> denied [Iozzia] adequate medical care, which resulted
> in his death.  As a result of [D]efendants' actions,
> [D]efendants deprived [Rodriguez] of rights afforded to
> her under the United States Constitution, specifically,
> the [F]ourteenth Amendment, namely the deprivation of
> [Iozzia's] life . . . .  [Rodriguez] submits that due
> to the powers vested in [D]efendants, [D]efendants
> subjected [Iozzia] to cruel and unusual punishment in
> the form of inadequate medical care.

Docket Entry No. 1-1, at 10-11.

[17]  If Iozzia in pre-trial detention, his claim is governed by the Due Process Clause of the Fourteenth Amendment.  If he was a convicted prisoner, his claim is governed by the Eighth Amendment proscription against cruel and unusual punishment.  See Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981); Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000).  The Complaint unduly conflates these principles.  Out of an abundance of caution, this Court presumes that Iozzia was a pre-trial detainee, and his claim is subject to the test detailed in Bell v. Wolfish, 441 U.S. 520 (1979).  See Hubbard, 399 F.3d at 157-60, 164-67; Fuentes, 206 F.3d at 341-42.

See Bell, 441 U.S. at 544; see also Montgomery v. Ray, 145 F. App'x 738, 740 (3d Cir. 2005) (the due process test of whether the conditions of confinement amounted to punishment prior to an adjudication of guilt is assessed with an eye on the Eighth Amendment which sets a floor for due process inquiries into conditions of pretrial detainees).  Correspondingly, the estate's due process medical care claim should be screened with an eye on

> the [Eighth Amendment] "deliberate indifference" standard of Estelle v. Gamble [429 U.S. 97 (1976) [which] must be met in the [claims asserting denial] of medical care to pretrial detainees.  See Monmouth Cty Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 n. 31 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

Brown v. Chambersburg, 903 F.2d 274, 278 (3d Cir. Pa. 1990).

For the purposes of examining *both* the Eighth Amendment and the Fourteenth Amendment conditions-of-confinement challenges, the Court of Appeals unambiguously

> emphasized that simple negligence was not the appropriate standard because "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." . . .  Medical malpractice may give rise to a tort claim in a state court but not . . . to a constitutional claim.

Boring v. Kozakiewicz, 833 F.2d 468, 471-73 (3d Cir. 1987) (addressing claims by two pre-trial detainees and an inmate whose initial pre-trial detention status eventually shifted to that of a convicted prisoner); see also Bass v. Sullivan, 550 F.2d 229 (5th Cir.), cert. denied, 434 U.S. 864 (1977).

Here, the Complaint asserts a chain of six relevant events: (a) Iozzia was not offered the heart medication prescribed when his pacemaker was implanted; (b) Iozzia did not have a pacemaker-check appointment around February 19, 2014; (c) Iozzia had his tooth extracted without pre- and post-extraction antibiotics; (d) Iozzia sat in a wheelchair for a few hours while waiting for an EKG; and (e) Iozzia did not have an AED shock.  See Docket Entry No. 1.  These events, assessed individually or in combination, fail to demonstrate the requisite deliberate indifference by the Jail's medical personnel, in general, and Evans in particular. See Iqbal, 556 U.S. at 662, 678 ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. [It demands] more than an unadorned, the defendant-unlawfully-harmed-me accusation"); see also Phillips v. Cty of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008) ("[A]llegations must be . . . above the speculative level") (citations, brackets and quotation marks omitted).  Although Iozzia was not offered his heart medication, the Complaint concedes that he never requested it until two days prior to his death.  Hence, the Jail officials' failure to offer the medication could potentially be qualified as negligence, but no fact in the Complaint asserts an intentional refusal.  Compare Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) ("deliberate indifference" is established when an inmate asserts facts showing that officials intentionally

15

refused to provide him with or prevented him from receiving the needed medical treatment).  The same applies to Iozzia's pacemaker check.  He was recommended to have a check every three months, and the first check should have been scheduled around February 19, 2014.  He died just six days after that date.[18]  As alleged, the six-day delay fails to demonstrate the requisite deliberate indifference, since the delay cannot qualify as unduly prolonged.  Compare id. ("deliberate indifference" is established when an inmate asserts facts showing that officials delayed the inmate's necessary medical treatment for a non-medical reason). Similarly, the Complaint is void of facts showing that the unidentified dentist's alleged failure to provide Iozzia with pre- and post-treatment antibiotics was anything but negligence. Furthermore, the fact that Iozzia sat in a wheelchair while waiting for an EKG, even if true, cannot demonstrate deliberate indifference, given that, as alleged, his EKG was taken, and the medical personnel tried to decipher the abnormalities it revealed.  Finally, the alleged fact of Evans' inability to administer an AED shock does not indicate deliberate indifference on her part, since the Complaint concedes that Iozzia's body was thoroughly wet and he was laying in a pool of water, and he was immediately taken to a hospital with resuscitation efforts in

---

[18]  Moreover, Iozzia developed heart "fluttering" only the day before his death and died of causes unrelated to his heart.

process.  In sum, the totality of the alleged events indicates
that the medical care might have been tainted by malpractice, but
not by a violation of constitutional magnitude.  In accordance,
Plaintiffs consistently framed their claims in terms of
negligence, defining Iozzia's medical care as "negligent,"
"grossly negligent," "a departure from the standard of care,"
"denial of adequate medical care," "[failure to follow]
protocol," "inadequate medical care," etc.  Thus, as pled, the
due process claim should be dismissed.  However, mindful of the
guidance in Foman v. Davis, 371 U.S. 178, 182 (1962), this Court,
while noting its substantial concern with the quality of the
Complaint, will allow an amendment of the due process claim.[19]

   **5.   Residual Claims**

   Here, in addition to the "assault and battery" and
"negligent entrustment/breach of fiduciary duty/vicarious
liability" state law theories deriving from Iozzia's arrest,
Plaintiffs raise ten theories related to Iozzia's medical care,

---

[19]   The Court notes, however, that Plaintiffs are not
entitled to discovery to support facts not yet pleaded.  See
Giovanelli v. D. Simmons General Contracting, 2010 U.S. Dist.
LEXIS 23685, at *17 (D. N.J. Mar. 15, 2010) ("Discovery . . .
cannot serve as a fishing expedition through which plaintiff
searches for evidence to support facts he has not yet pleaded")
(relying on Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 and
n.8 (2007) ("[B]efore proceeding to discovery, a complaint must
allege facts suggestive of illegal conduct")).

namely: (a) six state law theories, _i.e._, "wrongful death,"
"survival action," "loss of consortium," "intentional infliction
of emotional distress," "fraudulent concealment" and "medical
malpractice"; (b) two "theories" that do not relate to liability,
_i.e._, "funeral expenses" and "punitive damages"; and (c) two
theories resembling federal claims, one named "violation of 42
U.S.C. § 1983" (and addressed _supra_) and another denominated as
"false imprisonment."   Docket Entries Nos. 1 and 1-1.   The "false
imprisonment" claim reads, "The circumstances under which
[D]efendants restrained . . . Iozzia [during his in-Jail
detention] exposed [him] to risk of serious bodily injury,
including . . . death."   Docket Entry No. 1-1, at 14.

    A false imprisonment claim is a Fourth Amendment challenge
having _nothing in common_ with one's conditions of confinement.
See _Dowling v. City of Phila_., 855 F.2d 136, 141 (3d Cir. 1988).
Moreover, the period of false imprisonment runs only from the
moment of arrest until the arrestee's first legal action, _e.g._,
his arraignment or first court appearance, and cannot encompass
pre-trial detention post arraignment/first court appearance.   See
Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995); see
also Wallace v. Kato, 549 U.S. 384, 388 (2007).   Thus, on its
face, Plaintiffs' "false imprisonment" claim as pled is without
merit.   Accord Hinton v. Alabama, 134 S. Ct. 1081, 1089 (2014)
("An attorney's ignorance of a point of law . . . combined with

his failure to perform basic research on that point is a quintessential example of unreasonable [legal] performance").

Plaintiffs' remaining state law claims will be dismissed without prejudice, provided that Plaintiffs: (a) establish their standing to sue and this Court's federal jurisdiction; (b) assert legal rights cognizable under state law;[20] (b) detail who is the specific Plaintiff asserting each right; and (c) state *non-speculative and relevant* facts, in accordance with Rule 8.  See In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 276-77 (3d Cir. 2006) (facts should be analogous to "the first paragraph of any newspaper story — that is, the 'who, what, when, where and how' of the events at issue") (citations omitted).

**III. CONCLUSION**

For the foregoing reasons, the Complaint will be dismissed. Constitutional claims against immune Defendants and Defendants named solely under the theory of respondeat superior will be dismissed with prejudice.  Claims against remaining Defendants will be dismissed without prejudice.  Plaintiffs' false

---

[20] Not being Iozzia's spouse, Rodriguez is barred from recovery for her alleged loss of consortium or under the Wrongful Death Act, N.J. Stat. Ann. § 2A:31-1 et seq.  See Sykes v. Zook Enterprises, Inc., 215 N.J. Super. 461 (N.J. Super. Ct. 1987), aff'd 224 N.J. Super. 686 (N.J. Super. Ct. App. Div. 1988). Therefore, Rodriguez's consortium and wrongful death claims, as raised, are meritless.  Thus, no statement made in this Opinion or the accompanying Order shall be construed as this Court's position as to substantive validity of any Plaintiffs' state claims, if they are asserted, and that determination is reserved.

imprisonment claim will be dismissed with prejudice, as legally meritless.

The Clerk will be directed to add the estate as Plaintiff in this matter.  The estate's administratrix will be directed to verify her standing by producing the Surrogate's Court order vesting her status prior to commencement of this matter.

This action will be reserved for the estate's due process medical care claim and Plaintiffs' supplemental state law claims. The estate will be allowed to amend its due process claim, and Plaintiffs will be allowed to amend their supplemental claims.

The Clerk will be directed to commence a new matter for the estate's state law claims deriving from Iozzia's arrest transaction, if the estate elects to prosecute them.  The estate will be directed to pay the filing fee if it elects to prosecute its new matter and show cause why its state law claims should not be dismissed for lack of federal jurisdiction.

Defendants will be directed to enter appearances in this matter and the new matter without filing responsive pleadings at this juncture.

This Court's substantive determinations, short of those made in the Order accompanying this Opinion, will be reserved.  While this Court will retain jurisdiction over this matter and the new matter, the Clerk will be directed to administratively terminate

both matters.  See <u>Papotto v. Hartford Life & Accident Ins. Co.</u>, 731 F.3d 265 (3d Cir. 2013).

An appropriate Order follows.


<u>s/Renée Marie Bumb</u>
**RENÉE MARIE BUMB**
**United States District Judge**

Dated: <u>June 23, 2014</u>

21